# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**STEVIE JACKSON,**
**B63752,**

       **Plaintiff,**

                                **Case No. 17-cv-420-DRH**

**vs.**

**DONALD STOLWORTHY, et al.,**

       **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Stevie Jackson, <u>currently incarcerated in Menard Correctional Center</u>, brings this *pro se* action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that allegedly occurred when Plaintiff was <u>housed at Centralia Correctional Center ("Centralia") in 2015</u>. Plaintiff contends that he has been the victim of retaliation and other abuses because he is a litigious inmate and/or because he often files grievances against prison officials.[1] In connection with his claims, Plaintiff names 29 officials associated with the Illinois Department of Corrections (IDOC) and/or Centralia. The named Defendants include 3 unknown

---

[1] Plaintiff is no stranger to the federal courts, having filed several dozen lawsuits in the Northern and Central Districts of Illinois.

parties: (1) John Doe # 1 (Psychiatrist); John Doe # 2 (Centralia's cell placement officer); and John Doe # 3 (all officers in East 4 House on August 7, 2015 working the 7:00 am to 3:00 pm shift and the 3:00 pm to 11:00 pm shift).[2] Plaintiff seeks monetary damages and injunctive relief (to the extent that the Court finds injunctive relief is warranted).[3]

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

---

[2] To facilitate the orderly progress of this action going forward, the Clerk shall be directed to rename Unknown Party # 1 and Unknown Party # 2 as follows: (1) John Doe # 1 (Psychiatrist); John Doe # 2 (Centralia's cell placement officer); and John Doe # 3 (all officers in East 4 House on August 7, 2015 working the 7:00 am to 3:00 pm shift and the 3:00 pm to 11:00 pm shift). See FED. R. CIV. P. 21 ("the court may at any time, on just terms, add or drop a party").
[3] The Court notes that Plaintiff's request for injunctive relief is likely moot in light of Plaintiff's transfer to Menard Correctional Center.

*Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Background

This case was opened on April 24, 2017 without payment of the filing fee or the filing of a Motion and Affidavit to Proceed in District Court Without Prepaying Fees or Costs. (Docs. 1, 4). The preliminary screening of Plaintiff's Complaint has been delayed until now due to difficulties in locating Plaintiff's filing fee. A brief history of the issues encountered is detailed below.

On May 18, 2017, Plaintiff filed motions seeking to extend his deadline for paying the filing fee. (Docs. 5 and 6). Plaintiff explained that he authorized Menard's Trust Fund Account Officer to submit a $400.00 filing fee to the Court in April 2017. However, the check appeared to have been lost in the mail. Plaintiff also submitted paperwork supporting his claim. Specifically, records indicated that $400.00 was withdrawn from Plaintiff's account and mailed to the Southern District of Illinois (check No. 149399). The Court granted Plaintiff's request and directed Plaintiff to work with Menard to have a new check issued. (Doc. 7). For the next 3 months, the Court addressed motions from Plaintiff regarding his lost filing fee check and difficulties he was experiencing with Menard's Trust Fund Account Officer. (Docs. 8-10, 12, 15-19). At one point, Menard's Trust Fund Officer confirmed that the check was mailed, appeared to have been lost in the mail, and agreed to assist Plaintiff in canceling the lost check and reissuing payment. (Docs. 14 and 15).

On July 26, 2017, after Plaintiff continued to encounter difficulty with having a check reissued, the Court directed Menard's Trust Fund Account Officer to provide the Court with a status update, stating as follows:

> At this point, it is unclear whether responsibility for Plaintiff's filing fee difficulties rests with Plaintiff, Menard's Trust Fund Account Office, or is simply the result of bad luck. A review of the Court's online PACER database establishes that Plaintiff is a frequent and possibly abusive litigator in the federal courts, having filed several dozen lawsuits in the Northern and Central Districts of Illinois. Thus, Plaintiff is a veteran litigator and may be attempting to game the system. On the other hand, the Seventh Circuit has observed that there is an inherent conflict of interest in the prison lawsuit system" "[T]he law requires the payor (the prison) to process a drawer's request for payment to permit the drawer to sue the payor…[and] it is entirely predictable that the prison will prefer to postpone [a plaintiff's] ability to pursue litigation against itself." *Sultan v. Fenoglio,* 775 F.3d 888, 890 (7th Cir. 2015). The fact that Plaintiff is a frequent litigator suggests that the potential conflict of interest in the instant case is particularly strong.

(Doc. 17). With the above considerations in mind, the Court directed Menard's trust fund account officer to provide the Court with an update regarding the missing filing fee. *Id.* Further, the Court indicated that failure to comply with the Court's order would result in the Court setting a show cause hearing with the Trust Fund Account Officer required to appear personally in Court. *Id.* A check for Plaintiff's filing fee appeared on August 2, 2017, without any additional explanation.

## The Complaint

### Counts 1 and 2 – Harassment and Retaliation

Plaintiff arrived at Centralia on or about April 15, 2015. (Doc. 1, p. 12). Upon arrival, Lt. Quarrie, Lt. Delgado, Lt Johnson, and C/O Robinson began harassing Plaintiff, asking why he was transferred to Centralia. *Id.* For the next 30 days, the harassment continued. (Doc. 1, pp. 12-13). These individuals made constant remarks about Plaintiff's sexual preferences ("are you gay or not?"),

called Plaintiff "all sorts of gay homosexual names," laughed at Plaintiff, and made comments regarding things that happened to Plaintiff at his prior prison. *Id.* They also repeatedly came to Plaintiff's cell (which was in the day room) in the mornings, banged on his cell and shook the rails on his bed before beginning the verbal harassment. *Id.* They told Plaintiff "this is the hell [you are] going to be living for the complaints [you] filed" at previous institutions. (Doc. 1, p. 13).

Plaintiff contacted Aaron (described as a "psych" person) and Toennies (described as a clinical services employee) for help regarding the harassment. Aaron and Toennies indicated that Plaintiff would have to deal with the repercussions of his prior conduct (presumably filing complaints and/or grievances at his prior prison). *Id.* (claiming Aaron and Toennies both told Plaintiff: "you made your bed, now lay in it;" "when you grieve or complain about the little things this administration is going to chew you up and spit you out, then retaliate every time;" "you're the turd Dixon [Correctional Center] shit out and landed on this administration;"). Toennies also called Plaintiff names such as "dick sucker" and "black faggot." Toennies directed these derisive terms at Plaintiff "all the time" and told Plaintiff he should have been sent to a prison that caters to homosexuals. *Id.*

**Count 3 – Provoking Attacks**

In April 2015, Plaintiff was moved to North 4. (Doc. 1, p. 13). While in North 4, Plaintiff was harassed by Conrad and Bailey (both correctional officers). *Id.* Conrad and Bailey banged and kicked Plaintiff's door every morning and

turned other inmates against Plaintiff by telling them he is a homosexual and a snitch. As a result, Plaintiff was attacked by other inmates (inmates punched and kicked him and spit in his face). *Id.* He complained to Conrad and Bailey but they never intervened to help him. *Id.*

Plaintiff connects Macoby (a major), Phillips (a major), Schwartz (a major), Quarrie (a lieutenant), Johnson (a lieutenant), and Delgado (a lieutenant) to these allegations by stating that Conrad and Bailey would do anything these individuals wanted them to do. *Id.*

**Count 4 – Refusal to Honor Low Bunk Permit**

Plaintiff suffers from serious arthritis and gout. (Doc. 1, p. 16). Plaintiff's back, legs, and shoulders are "bound" by arthritis. *Id.* At the time of the alleged constitutional violation, Plaintiff had permission to use a cane and had bottom bunk/slow walk permits. (Doc. 1, p. 13).

When Plaintiff was in North 4 House, Conrad and Bailey refused to honor the permit. *Id.* They told Plaintiff that, as long as he is in their house, he will "be climbing [his] black nigger ass up to the top bunk." *Id.* Plaintiff contends he injured his back and sprained his right knee as a result of this conduct. He also contends he complained to every supervisory official listed in his Complaint about the alleged deprivation, to no avail. *Id.*

Plaintiff was subsequently transferred to East 4 House. When Plaintiff was in East 4 House, Kauling refused to honor Plaintiff's bottom bunk permit. (Doc. 1, p. 16). Kauling told Plaintiff that Delgado issued an order to leave Plaintiff on the

top bunk. *Id.* Plaintiff complained to and showed Delgado, Quarrie, Burton, Robinson, Campbell, and Aaron his bottom bunk permit, but they refused to help. *Id.* Campbell told Plaintiff to "stop whining like a little bitch" and said the permit did not mean "shit" to her. *Id.* Aaron told Plaintiff there was nothing that he could do and then offered a solution, he told Plaintiff "stop coming to prison…you come to prison, you get what comes with prison." *Id.*

Plaintiff also complained to John Doe 3 (all officers in East 4 House on August 7, 2015 working the 7:00 am to 3:00 pm shift and the 3:00 pm to 11:00 pm shift), but they refused to help. *Id.*

**Count 5 – Gym/Yard Restrictions**

When Plaintiff was in North 4 House, Bailey, Conrad, Foreman, and Delgado often refused to allow Plaintiff access to the gym and yard. (Doc. 1, p. 14). These Defendants told Plaintiff he could not have access to the gym or yard because he used a cane. *Id.* They provided Plaintiff various "excuses" for denying gym/yard privileges, such as "it would break our hearts if you should slip and fall" or "we believe you're taking your cane in the yard/gym to use it as a weapon." *Id.* Plaintiff contends that "from the time he was brought to North 4 House," he was only allowed in the yard 4 times and in the gym 6 times. *Id.* The Complaint indicates that Plaintiff was in the North 4 House from April 2015 through August 7, 2015, when he was transferred to East 4 house. (Doc. 1, pp. 13, 17). Unlike some of Plaintiff's other claims, Plaintiff does not allege that the deprivation was in retaliation for his prior First Amendment activities. Plaintiff alerted "all the

defendants listed in his complaint" about the alleged deprivation, but nothing was done. *Id.* Because Plaintiff was often confined to his cell, he developed anxiety, depression, and other physical symptoms. *Id.*

**Counts 6 and 7 – harassment, cell shake downs, and threats to frame**

When Plaintiff was in North 4 House, Bailey, Conrad, and Foreman shook down Plaintiff's cell almost every day, sometimes multiple times a day, for no reason. *Id.* During these shake downs, Defendants would confiscate Plaintiff's property and verbally harass Plaintiff (Plaintiff alleges they called him "every homosexual name in the book"). *Id.* On one occasion, Foreman told Plaintiff he "looked like [he] suck[s] good cock and [he] act[s] like [he] got a big dick jammed off in [his] ass." *Id.* These Defendants threatened to plant contraband in Plaintiff's cell and threatened to file false disciplinary reports against the Plaintiff. *Id.* They told Plaintiff the shake downs would stop when Plaintiff stopped filing grievances. *Id.* Plaintiff contends he was terrified of these individuals and that they harassed him almost every day. *Id.*

**Count 8  – Deliberate Indifference to Serious Medical Condition**

Plaintiff alleges that he suffers from serious arthritis and gout. (Doc. 1, p. 16). The arthritis restricts movement in his shoulders, back, and legs. *Id.* Plaintiff contends that walking without a cane and certain activities, such as climbing to the top bunk, cause him excruciating pain. *Id.* According to Plaintiff, despite being aware of these issues and his associated pain, Defendants Santas (a prison

physician) and Keebs (a healthcare supervisor) rescinded Plaintiff's permit to use a cane, as well as his low bunk/slow walk permit. (Doc. 1, pp. 4, 15-16).

According to the Complaint, both Santas and Keebs opined that Plaintiff did not really need the permits. (Doc. 1, pp. 15-16). For instance, Santas told Plaintiff various correctional officers reported that Plaintiff was lazy and did not really need his cane. (Doc. 1, p. 15). Keebs told Plaintiff his pain was all in his mind. *Id.* Plaintiff insisted he was in extreme pain and absolutely needed the cane and the low bunk/slow walk permits. (Doc. 1, pp. 15-16). Plaintiff also told Santas and Keebs that the correctional officers were lying about Plaintiff in retaliation for his complaints and grievances. (Doc. 1, pp. 15-16).

In response, Santas indicated the administration was pressuring him to revoke the cane because prisoners who ingest "psych meds" are generally not allowed to have canes. (Doc. 1, p. 15). Plaintiff repeated, in more detail, the amount of pain and difficulty he experienced without a cane. *Id.* Santas indicated he did not care because the administration and officers felt Santas should not continue to allow Plaintiff to use a cane. *Id.* Plaintiff further contends that Keebs disregarded his complaints and rescinded or supported the decision to rescind his cane and low bunk/slow walk permits. (Doc. 1, pp. 15-16).

**Counts 9, 10, 11- Failure to Protect and Retaliation (Inmate Barlow)**

On or about August 7, 2015, Bailey and Conrad told Plaintiff they would be moving his "black ass" to the place where he belongs – a new cell in the more aggressive and dangerous East 4 House. (Doc. 1, p. 16). They stated they were

going to let Plaintiff's new cell mate (an inmate identified as Barlow B42396) give him what he deserved – "a good ass beating." *Id.* They also told Plaintiff to "grieve that" and stated if Plaintiff had "stopped grieving them" they would not be doing this. *Id.* As Plaintiff was being escorted to his new cell, another inmate told him that Barlow was extremely dangerous and sexually aggressive. *Id.*

John Doe # 2 (Centralia's cell placement officer) assisted Bailey and Conrad by assigning Plaintiff to Barlow's cell. (Doc. 1, p. 19).[4]

Plaintiff asked Aaron, Dose, Delgado, Quarrie, Robinson, and Burton to move him out of Barlow's cell. (Doc. 1, p. 17). Plaintiff told these individuals that Barlow repeatedly attempted to force sexual acts on Plaintiff and when Plaintiff refused, Barlow beat him. *Id.* When Plaintiff told Aaron the things Barlow was doing to him, including the fact that Barlow was masturbating in the cell and throwing his sperm in Plaintiff's face, Aaron only laughed at Plaintiff *Id.* Kauling told Plaintiff to "give Barlow some ass and he'll calm down." *Id.*

Plaintiff also sent several letters to Defendant Mueller (Centralia's Warden) detailing Barlow's abuse. *Id.* In the letters, Plaintiff relayed that Barlow "always tried to rape [Plaintiff]" after Plaintiff ingested his psych medications, when Plaintiff was in a debilitated state (his psych meds left him in a "drunken state," making it difficult to defend himself). *Id.*

---

[4]  The Complaint alleges that John Doe # 2 (Centralia's cell placement officer) "conspired" with Bailey and Conrad to ensure that Plaintiff was housed with an aggressive cell mate. (Doc. 1, p. 19). Because John Doe # 2 is the cell placement officer and is presumably responsible for housing assignments, the Court views this as an allegation that John Doe # 2 participated in the alleged constitutional violation by assigning Plaintiff to the subject cell.

On or about August 24, 2015, Barlow let Plaintiff have the bottom bunk because Defendant Macon (also described as Centralia's Warden (Doc. 1, p. 3)) "got involved." This enraged Barlow and he became even more aggressive with Plaintiff, calling him a snitch.

On or about August 27, 2015, Barlow became extremely angry when Plaintiff refused to engage in sexual activity. *Id.* Barlow physically assaulted Plaintiff, calling him a "bitch" and a "snitch." *Id.* Barlow then put his penis on Plaintiff's face, shoved Plaintiff to the ground, and attempted to rape him. *Id.* After the attempted rape, Barlow left the cell. *Id.*

When Barlow left the cell, Plaintiff reported the assault to Kauling. *Id.* He yelled loudly so all the officers in the area could hear what had just happened. *Id.* Plaintiff was taken to Delgado. *Id.* Initially, Delgado refused to let Plaintiff speak to mental health services. Delgado wanted Plaintiff to make the report in front of other inmates. *Id.* Plaintiff refused.

Although it is not entirely clear, it appears that at some point Plaintiff insisted on reporting the sexual assault. *Id.* Because Plaintiff reported the sexual assault, Delgado, Quarrie, and Robinson took Plaintiff to segregation. *Id.* Robinson filed a false report indicating that Plaintiff had lied. *Id.* Warden Mueller also punished Plaintiff for reporting the sexual abuse. *Id.* Warden Mueller told Plaintiff he would not be getting his television, radio, and other personal items. *Id.* He also indicated that Plaintiff would have no yard or gym privileges and denied him access to all other out-of-cell activities, including attending church services

and using the law library. *Id.* Johnson, Delgado, Robinson, Burton, and Quarrie told Plaintiff he should have shut his mouth and he would not have been placed in segregation. *Id.*

**Count 12 – Conditions of Confinement**

Plaintiff remained in segregation for 26 days, locked in his cell 24-hours a day, and was only allowed to shower on 3 occasions. *Id.* The cell was infested with spiders, mice, and other bugs. *Id.* Plaintiff complained to Krebs, she told Plaintiff an exterminator had been called. *Id.*

**Counts 13 and 14 – Failure to Protect and Deliberate Indifference (Unknown Officer)**

While still in segregation, on September 15, 2015, Plaintiff was taken to the shower. *Id.* On the way to the showers, Plaintiff encountered another inmate that was a member of Barlow's gang. *Id.* The inmate told Plaintiff he was going to "fuck Plaintiff up" and did so in front of an unidentified officer. *Id.* At some point thereafter, the inmate attacked Plaintiff. *Id.* He punched and kicked Plaintiff. (Doc. 1, pp. 17-18). After the assault, the unidentified officer denied Plaintiff medical care. (Doc. 1, p. 18).

**Counts 15 and 16 - Retaliation and Access to the courts**

Plaintiff contends that the correctional officer in charge of the law library, Gooden, repeatedly refused to allow Plaintiff access to and/or provide Plaintiff with legal materials. (Doc. 1, p. 18). For instance, Plaintiff contends he was often denied access to the law library and other legal research he requested. *Id.* He also claims he was denied access to his own personal legal materials. *Id.* According to

the Complaint, Gooden was denying Plaintiff access in retaliation for Plaintiff's history of filing grievances against Gooden's colleagues. *Id.* Gooden told Plaintiff he was a "correctional officer at heart" and "when you have any of my partners in your grievance, you're shit out of luck from getting help from me." *Id.*

### Count 17 – Eighth Amendment Claim (Unknown Officers)

When Plaintiff was released from segregation, the "officers" told other inmates that Plaintiff was a snitch and a homosexual. (Doc. 1, p. 18). As a result, Plaintiff was physically and sexually assaulted on numerous occasions. *Id.*

### Count 18 – Constitutional Claim (Mueller)

When Plaintiff was released from segregation, Warden Mueller kept Plaintiff in a receiving cell for more than 30 days. (Doc. 1, p. 18). During this time, Plaintiff was assigned many different cell mates. *Id.* Warden Mueller told Plaintiff he was allowing Plaintiff to have as many different cell mates as Plaintiff wanted. *Id.* Plaintiff had a new cell mate, soliciting him for sex or taking Plaintiff's commissary items, every other week. *Id.* According to the Complaint, Warden Mueller knew this would "break" Plaintiff and it did. *Id.*

### Merits Review Pursuant to § 1915(A)

### Division of Counts

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. Any other claim that is mentioned in the Complaint but not addressed in

this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

**COUNT 1 –** Eighth Amendment cruel and unusual punishment claim against Quarrie, Delgado, Johnson, Robinson, Aaron, and Toennies for harassing Plaintiff and/or failing to intervene in the harassment of Plaintiff.

**COUNT 2 –** First Amendment retaliation claim against Quarrie, Delgado, Johnson, Robinson, Aaron, and Toennies for retaliating against Plaintiff for filing complaints and grievances at his previous prison and/or for failing to intervene in ongoing retaliation.

**COUNT 3 –** Eighth Amendment claim against Conrad, Bailey, Macoby, Phillips, Schwartz, Quarrie, Johnson, and Delgado for provoking other inmates to attack Plaintiff by labeling him a snitch and a homosexual.

**COUNT 4 –** Eighth Amendment deliberate indifference claim against Conrad, Bailey, Kauling, John Doe # 3, Delgado, Quarrie, Burton, Robinson, Campbell, and Aaron for failing to honor Plaintiff's bottom bunk permit.

**COUNT 5 –** Eighth Amendment cruel and unusual punishment claim against Bailey, Conrad, Foreman, and Delgado for restricting Plaintiff's access to the gym and yard when Plaintiff was in North 4 House.

**COUNT 6 –** Eighth Amendment cruel and unusual punishment claim against Bailey, Conrad, and Foreman for harassing Plaintiff (unjustified cell shake downs, verbal harassment, and threats when Plaintiff was in North 4 House).

**COUNT 7 –** First Amendment retaliation claim against Bailey, Conrad, and Foreman for retaliating against

Plaintiff (unjustified cell shake downs, verbal harassment, and threats when Plaintiff was in North 4 House) for filing grievances.

**COUNT 8 –**    Eighth Amendment deliberate indifference claim against Santas and Keebs for discontinuing/failing to renew Plaintiff's permission to use a cane, as well as his low bunk/slow walk permits.

**COUNT 9 –**    First Amendment retaliation claim against Bailey, Conrad, and John Doe # 2 for transferring Plaintiff to East 4 House and placing Plaintiff in a cell with Barlow as retaliation for filing grievances.

**COUNT 10 –**    Eighth Amendment failure to protect claim against Aaron, Dose, Delgado, Quarrie, Robinson, Burton, Kauling, and Mueller, for failing to protect Plaintiff from Barlow.

**COUNT 11 –**    First Amendment retaliation claim against Delgado, Quarrie, Robinson, Mueller, Johnson, and Burton for placing Plaintiff in segregation and imposing other restrictions as retaliation for reporting the assault by Barlow.

**COUNT 12 –**    Eighth Amendment conditions of confinement claim against Kreebs in relation to the insect infestation in Plaintiff's segregation cell.

**COUNT 13 –**    Eighth Amendment claim directed against an unknown officer for failing to protect Plaintiff from being assaulted by another inmate on September 15, 2015.

**COUNT 14 –**    Eighth Amendment claim directed against an unknown officer for refusing to provide Plaintiff with medical care after Plaintiff was assaulted by another inmate on September 15, 2015.

**COUNT 15 –**    First and/or Fourteenth Amendment access to the courts claim against Gooden.

**COUNT 16 –** First Amendment retaliation claim against Gooden for denying Plaintiff access to the law library and other legal materials in retaliation for Plaintiff filing grievances against other correctional officers.

**COUNT 17 –** Eighth Amendment claim for labeling Plaintiff a homosexual and a snitch, after Plaintiff was released from segregation, resulting in multiple attacks.

**COUNT 18 –** Unidentified constitutional claim against Mueller for trying to "break" Plaintiff by repeatedly assigning Plaintiff new cellmates after Plaintiff was released from segregation, resulting in other inmates taking advantage of Plaintiff and sexually assaulting Plaintiff.

*Discussion*

### Count 1

In *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000), the Seventh Circuit held that "*simple* verbal harassment", such as the use of racially derogatory language, does not, standing alone, constitute cruel and unusual punishment. *Id*. at 612 (emphasis added). *See also Dobbey v. Ill. Dep't of Corrections*, 574 F.3d 443, 446 (7th Cir. 2009) ("[H]arassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment."); *Patton v. Przbylski*, 822 F.2d 697, 700 (7th Cir. 1987) (although unprofessional and inexcusable, racially derogatory remarks did not support a constitutional claim).

The Seventh Circuit recently revisited *DeWalt'*s holding in *Beal v. Foster*, 803 F.3d 356 (7th Cir. 2015). In *Beal*, the plaintiff alleged that the defendant, a

sergeant, "'made verbal sexual comments directed towards inmate Brian Anthony, telling Ronald Beal to place his penis inside Brian Anthony,' and that 'on several prior occasions' [the defendant] had urinated in view of the plaintiff (by leaving the bathroom door open) and of other inmates, looking at them 'while smiling.'" *Id.* at 358. Plaintiff also claimed that other inmates were calling him derisive terms for homosexuals; conduct that may have been "inspired or encouraged" by the defendant's comments and that he "experienced severe psychological harm" as a result of the defendant's harassment. *Id.* Plaintiff's Eighth Amendment claim pertaining to the defendant's conduct was dismissed at screening.

The Appellate Court concluded that the dismissal was premature and in doing so, clarified its prior holding in *Dewalt.* The Seventh Circuit explained that "purely verbal" harassment can, under certain circumstances, amount to cruel and unusual punishment. *Id.* at 357-58. To illustrate this point, the Appellate Court discussed the following hypotheticals:

> Suppose a prisoner is having severe headaches and he complains about them to a prison doctor, who writes him a prescription for a powerful drug. A malicious guard learns of this and tells the prisoner the following lie: "the doctor didn't tell you, but he told me: you have incurable brain cancer and will be dead in three months. Now let me tell you what he told me are the symptoms you will be experiencing as your cancer worsens." Or the guard, again lying, tells another prisoner: "I am sorry to have to inform you that your wife and children have been killed in a car crash."

*Id.* at 357. The Seventh Circuit noted that, despite being "purely verbal," the harassment in both examples was "as cruel" as cases involving "physical brutalization." *Id.* Accordingly, the Court reasoned, drawing "a categorical

distinction between verbal and physical harassment is arbitrary." In other words, both physical and psychological pain can constitute cruel punishment. *Id.* at 357-58. In reaching this decision, the Court clarified that "simple," as used to describe verbal harassment in *DeWalt*, was the wrong word:

> [I]t is unclear what "simple" is intended to connote. In our hypothetical examples, the verbal harassment is "simple" in the sense of being brief, lucid, and syntactically simple. But what is simple can also, as in our two examples, be devastating. In *DeWalt* the plaintiff had alleged that a prison officer had "made a series of sexually suggestive and racially derogatory comments to [the plaintiff] regarding certain female teachers at the prison schools." *Id.* at 610. This verbal harassment was directed, to a significant degree, at the female teachers rather than at DeWalt, and second-hand harassment may be too "simple" to state a claim of cruel and unusual punishment, whereas the lies in our two hypothetical cases were aimed directly and hurtfully at the prisoner. But "simple" is the wrong word; what is meant is "fleeting," too limited to have an impact.

*Beal,* 803 F.3d at 358.

With these principles in mind, the Appellate Court concluded the dismissal of the harassment claim was premature. In reversing and remanding, the Appellate Court specifically noted that the harassment allegedly resulted in severe psychological trauma, was repetitive, was not purely verbal (urinating is not verbal), may have endangered Plaintiff because it happened in front of other inmates, and may have carried more weight because the defendant was a sergeant.

In the instant case, Plaintiff alleges he was harassed by Quarrie, Delgado, Johnson, and Robinson for "30 consecutive days." Quarrie, Delgado, and

Johnson are described as being lieutenants. (Doc. 1, p. 5). The harassment included shaking Plaintiff's cell (which was in the dayroom) and the rails on his bed. These individuals made repeated derogatory remarks about Plaintiff's sexual orientation and accused him of being a homosexual; it is unclear whether this harassment occurred in front of other inmates. Plaintiff contends that Toennies repeatedly called him derisive terms for homosexuals and that this occurred "all the time." Plaintiff also contends that he reported the ongoing harassment to Toennies and Aaron, but both Defendants refused to help Plaintiff.

Considering these allegations, further development of the record is needed to determine if the alleged conduct amounts to cruel and unusual punishment under the Eighth Amendment and, if it does, whether each Defendant was personally involved in the constitutional deprivation or subject to liability for failure to intervene in the ongoing constitutional deprivation. *See Perez v. Fenoglio*, 792 F.3d 768 (7th Cir. 2015). Accordingly, **Count 1** shall receive further review as to **Quarrie, Delgado, Johnson, Robinson, Aaron,** and **Toennies**.

## Count 2

The Complaint suggests that the verbal harassment described with respect to Count 1 was retaliatory. Plaintiff alleges Defendants were retaliating for complaints and/or grievances Plaintiff filed at prior institutions. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle*, 680 F.3d 859,

866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d 607; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). To establish a § 1983 claim of First Amendment retaliation, an inmate must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future"; and (3) a causal connection between the two. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir.2009) (citation omitted).

The Complaint suggests that Plaintiff has a history of filing grievances and complaints at other institutions. Plaintiff contends that Defendants stated Plaintiff was being harassed because of his prior complaints and grievances. This is sufficient to survive screening.

Accordingly, **Count 2** shall receive further review as to **Quarrie, Delgado, Johnson, Robinson, Aaron, and Toennies** on the theory that the Defendants were either directly involved in the alleged retaliation or were aware of the same but failed to intervene.

## Count 3

The Eighth Amendment is violated when prison officials are deliberately indifferent to a substantial risk of serious harm, including violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 828, 831-33 (1994). Allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment. *Merritte v. Kessel*,

561 Fed.Appx. 546, 548 (7th Cir. 2014); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2009); *see also Irving v. Dormire*, 519 F.3d 441, 449 (8th Cir. 2008) (officer's attempt to have other inmates attack plaintiff may violate Eighth Amendment, even where the plaintiff was not actually assaulted); *Northington v. Jackson*, 973 F.2d 1518, 1525 (10th Cir. 1992) (Eighth Amendment claim stated where guard "intended to do harm to [a prisoner] by inciting inmates to beat him[;]" guard told other inmates that plaintiff was a snitch).

Plaintiff contends he was repeatedly assaulted by prisoners because Conrad and Bailey told prisoners that Plaintiff was a snitch and a homosexual. This is sufficient, at the screening stage, to warrant further review as to Conrad and Bailey. However, Plaintiff's vague claim as to Macoby, Phillips, Schwartz, Quarrie, Johnson, and Delgado (Conrad and Bailey did "anything" these individuals wanted) is insufficient.

Accordingly, **Count 3** shall receive further review as to **Conrad** and **Bailey**. However, **Count 3** shall be dismissed without prejudice as to **Macoby**, **Phillips**, **Schwartz**, **Quarrie**, **Johnso**n, and **Delgado**.

## Count 4

A prisoner who wishes to bring a claim against state officials under the Eighth Amendment must show that he suffered from a sufficiently serious medical condition (i.e., an objective standard) and state officials exhibited deliberate indifference to his medical needs (i.e., a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir.

2001). Plaintiff has alleged that he suffers from serious arthritis and gout; the arthritis is so serious, his shoulders, back, and legs are "bound" by it. (Doc. 1, p. 16). This is sufficient to qualify as a serious medical condition, at least at this preliminary stage of the case. *See Norfleet v. Webster,* 439 F.3d 392 394-95 (7th Cir. 2006); *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997); *Gutierrez,* 111 F.3d at 1372 n.7. Plaintiff's Complaint also sufficiently alleges that Conrad, Bailey, John Doe # 3, Kauling, Delgado, Quarrie, Burton, Robinson, Campbell, and Aaron acted with deliberate indifference to his condition by failing to honor his low-bunk permit. (Doc. 1, pp. 14, 16).

Accordingly, **Count 4** shall receive further review as to **Conrad**, **Bailey**, **John Doe # 3, Kauling**, **Delgado**, **Quarrie**, **Burton**, **Robinson**, **Campbell**, and **Aaron**.

The Court notes Plaintiff claims he complained to every supervisory official identified in the Complaint[5] about Conrad and Bailey refusing to honor his low-bunk permit, to no avail. But, the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability." *Aguilar v. Gaston-Camara,* 2017 WL 2784561, *4 (7th Cir. 2017) (citing *Burks v. Raemisch,* 555 F.3d 592, 595 (7th Cir. 2009). And, although a prison official may be subject to liability for failure to act where his knowledge of prison conditions, learned from a prisoner's communications, triggers a duty to exercise his or

---

[5] "I told all the majors, wardens, lieutenants (listed in my complaint), Barttoennis, Marc Aaron, Mr. Burton, and c/o Robinson about Bailey and Conrad forcing me to climb and sleep the top bunk…" (Doc. 1, p. 13).

authority to investigate and rectify the offending condition, *see Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015), Plaintiff's allegations do not sufficiently allege a basis for such liability. Accordingly, to the extent Plaintiff intended to pursue a claim against all of the supervisory Defendants identified in the Complaint, with respect to Count 4, he should consider that claim dismissed without prejudice.

## Count 5

Plaintiff contends that, while he was in North 4 House, he was often denied access to the Yard/Gym. As a result, he stayed in his cell most days. While Plaintiff was in the North 4 House, he was only allowed access to the yard on 4 occasions and to the gym on 6 occasions. As a result, Plaintiff's body began to lock up and he experienced high blood pressure, anxiety, and depression.

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious

deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The second requirement is a subjective element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. Farmer, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Restricting Plaintiff's access to the gym and yard might raise a constitutional issue *if* Plaintiff was deprived of the ability to exercise. The Seventh Circuit has noted that a "[l]ack of exercise could rise to a constitutional violation where movement is denied and muscles are allowed to atrophy, and the health of the individual is threatened." *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (28-day denial of exercise not unconstitutional); *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985), cert. denied, 479 U.S. 817 (1986). However, "[u]nless extreme and prolonged, lack of exercise is not equivalent to a medically threatening situation." *Harris*, 839 F.2d at 1236; *see Delaney v. DeTella*, 256 F.3d 679, 683-85 (7th Cir. 2001) (6-month denial states a claim; a strong likelihood of injury is present after 90 days).

In Plaintiff's case, he does not claim that he was deprived of all exercise, but only that he was often denied the ability to exercise in the gym or yard. The Complaint does not allege that Plaintiff was unable to exercise in his cell - even in a cell, a prisoner may engage in some exercise by, for example, jogging in place or doing aerobics. *See e.g., Harris*, 839 F.2d at 1236. Additionally, the Complaint does not suggest that Plaintiff was denied access to other out-of-cell activities. Finally, it appears that Plaintiff was housed in North 4 for approximately 4 months (April 2015 through August, 7, 2015). (Doc. 1, pp. 14, 17). During this time, Plaintiff was allowed access to the yard on 4 occasions and to the gym on 6 occasions. This level of access to yard and gym privileges is nowhere near as restrictive as conditions that have been found to rise to the level of a constitutional violation.

As alleged, the restricted access to exercise in the yard and gym does not state a constitutional claim. Accordingly, **Count 5** shall be dismissed without prejudice.

The Court also notes that, unlike some of the other claims asserted in the Complaint, Plaintiff does not expressly allege that the restricted access was retaliatory. Accordingly, the Court does not consider whether the deprivation alleged in Count 5 states a claim for retaliation.

## Count 6

When Plaintiff was in North 4 House, Conrad, Bailey, and Foreman shook Plaintiff's cell down almost every day, sometimes multiple times a day – for no

reason. (Doc. 1, p. 14). They confiscated his personal property, threatened to hide contraband in his cell, and threatened him with false disciplinary action. *Id.* These individuals also verbally harassed Plaintiff, calling him "every homosexual name in the book." *Id.* On one occasion, Foreman told Plaintiff he looks like he likes to "suck big cock" and acts like he has "a big dick jammed off in [his] ass." *Id.* Plaintiff contends he was terrified.

Considering these allegations, further development of the record is needed to determine if the alleged conduct amounts to cruel and unusual punishment under the Eighth Amendment. *See* analysis with respect to Count 1, *supra.* Accordingly, **Count 6** shall receive further review as to **Bailey**, **Conrad**, and **Foreman**.

### Count 7

Plaintiff alleges that the conduct at issue in Count 6 was retaliatory. (Doc. 1, p. 14). Specifically, he alleges he was told "they [Conrad, Bailey, and Foreman] would stop when [Plaintiff] stopped grieving." *Id.* This is sufficient, at the screening stage, to proceed on a First Amendment claim for retaliation as to these Defendants. *See* analysis with respect to Count 2, *supra.*

Accordingly, **Count 7** shall receive further review as to **Bailey, Conrad,** and **Foreman.**

### Count 8

Plaintiff contends that he suffers from severe arthritis and gout, causing severe pain and restricting use of his back, shoulders, and legs. (Doc. 1, p. 16).

Nonetheless, Santas and Keeb revoked and/or failed to renew Plaintiff's permission for use of a cane, as well as his low bunk/slow walk permits. (Doc. 1, pp. 15-16). Plaintiff contends this caused excruciating pain and exacerbated his condition. *Id.* The Complaint also suggests Plaintiff's cane and low bunk/slow walk permits may have been revoked for a nonmedical reason (pressure from officers and prison administration). *Id.* These allegations sufficiently state a claim for deliberate indifference, at least at this stage of the litigation. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007).

Accordingly, **Count 8** shall receive further review as to **Santas** and **Keeb**.

## Count 9

On or about August 7, 2015, Bailey and Conrad, with the help of John Doe # 2 (Centralia's cell placement officer) transferred Plaintiff to East 4 House where Plaintiff was housed with Barlow, an inmate known to be dangerous and "sexually aggressive." (Doc. 1, p. 16). Bailey and Conrad indicated that Plaintiff was intentionally being housed with Barlow so Plaintiff would get what he deserved ("a good ass beating") for filing grievances. *Id.* Plaintiff was subsequently assaulted by Barlow. (Doc. 1, pp. 16-17). This is sufficient, at the screening stage, to proceed on a First Amendment claim for retaliation as to these Defendants. *See* analysis with respect to Count 2, *supra.*

Accordingly, **Count 9** shall receive further review as to **Bailey, Conrad, and John Doe # 2.**

## Count 10

In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court held that "prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (internal citations omitted). *See also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).

In order for a plaintiff to succeed on a claim for failure to protect, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id*.; *Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a specific threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

Plaintiff has sufficiently stated a failure to protect claim against Aaron, Dose, Delgado, Quarrie, Robinson, Burton, Kauling, and Mueller. (Doc. 1, p. 17). Plaintiff told these defendants that Barlow was attempting to sexually assault Plaintiff and had beaten Plaintiff when he refused Barlow's sexual advances. *Id.* The defendants failed to respond to protect Plaintiff from harm, and, according to the Complaint, Plaintiff was attacked by Barlow on or about August 27, 2015.

**Count 10** will therefore be allowed to proceed against **Aaron, Dose, Delgado, Quarrie, Robinson, Burton, Kauling,** and **Mueller.**

### Count 11

Plaintiff alleges Delgado, Quarrie, and Robinson placed him in segregation for 26 days because he insisted on reporting that he had been assaulted by

Barlow. (Doc. 1, p. 17). Mueller subjected Plaintiff to additional restrictions for the same reason. *Id.* Delgado, Quarrie, Robinson, Johnson, and Burton told Plaintiff he was being punished for not keeping his mouth shut. *Id.*

This is sufficient, at the screening stage, to state a claim as to Delgado, Quarrie, Robinson, and Mueller – the individuals that were directly responsible for placing Plaintiff in segregation and/or imposing additional retaliatory restrictions on Plaintiff. Plaintiff, however, has not stated a claim as to Johnson and Burton. Plaintiff does not allege that Johnson and Burton participated in the alleged retaliatory punishment. He only alleges that these individuals told him he was being punished for reporting the assault.

Accordingly, **Count 11** shall receive further review as to **Delgado, Quarrie, Robinson,** and **Mueller**. **Count 11** shall be dismissed without prejudice as to **Johnson** and **Burton** for failure to state a claim upon which relief can be granted.

### Count 12

Plaintiff contends that his cell was filthy and infested with insects and mice. (Doc. 1, p. 17). Plaintiff told Krebs and she indicated that an exterminator had been called.

Although the Constitution "does not mandate comfortable prisons," it does require inmates to be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A claim for unconstitutional conditions of confinement includes an objective and a

subjective component. *Farmer*, 511 U.S. at 834. Plaintiff must demonstrate (1) that he suffered a sufficiently serious deprivation (i.e., objective standard), and (2) the defendant acted with deliberate indifference to his conditions of confinement (i.e., subjective standard). *Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008) (citing Farmer, 511 U.S. at 837).

Plaintiff's Complaint falls short of stating a conditions of confinement claim against Krebs. Assuming that the complained of conditions satisfy the objective prong, Plaintiff has not alleged that Krebs acted with deliberate indifference. He alleges that Krebs called an exterminator or indicated that an exterminator had been called. This single allegation as to Krebs is insufficient.

Accordingly, **Count 12** shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

## Counts 13 and 14

When Plaintiff was housed in segregation, on September 15, 2015, an unidentified officer escorted Plaintiff to the shower. (Doc. 1, p. 17). According to the Complaint, this unidentified officer failed to protect Plaintiff from an attack by another inmate and denied Plaintiff medical care following the attack. *Id.*

This individual is not identified as a defendant in the caption of the Complaint or in the section of the Complaint that identifies the parties. Because this individual is not listed in the caption by name or by Doe designation, he cannot be treated as a defendant in this case. *See* Fed. R. Civ. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*,

416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption"); *Id*. at 553 ("[It is] unacceptable for a court to add litigants on its own motion. Selecting defendants is a task for the plaintiff, not the judge.").

Accordingly, **Counts 13 and 14**, which are directed at an unidentified officer who is not a party to this action, shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Count 15

Plaintiff contends that Gooden, the correctional officer in charge of the law library, repeatedly refused to allow Plaintiff access to the law library and/or to his own legal materials. (Doc. 1, p. 18). Plaintiff also alleges that Gooden often refused to provide Plaintiff with requested legal research. The Complaint, however, does not indicate that Gooden's actions caused him to suffer any actual or potential detriment to his ability to pursue a meritorious claim in court. Actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642–43 (7th Cir.1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021–22 (7th Cir.1987). An inmate has no constitutional claim unless he can demonstrate that a non-frivolous legal claim has been frustrated or impeded. *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996).

Accordingly, based on Plaintiff's failure to allege a detriment, **Count 15** shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

### Count 16

According to the Complaint, the conduct that is the basis of Plaintiff's access to the courts claim in Count 15 was retaliatory. (Doc. 1, p. 18). Specifically, Plaintiff contends that Gooden indicated he is "still a correctional officer at heart" and stated "if you have any of my partners in your grievance, you're shit out of luck from getting help from me." *Id.*

This is sufficient to allow **Count 16** to proceed as to **Gooden**. *See* analysis with respect to Count 2, *supra*.

### Count 17

Plaintiff alleges that, when he was released from segregation, "officers" told other inmates that Plaintiff was a snitch and a homosexual. (Doc. 1, p. 18). As a result, Plaintiff claims he was repeatedly assaulted by other inmates. These allegations suggest that Plaintiff may have a viable claim against the involved officers for provoking an attack or attacks on Plaintiff.[6] However, Count 17 is not associated with any particular defendant. Instead, it is directed against generic "officers."[7]

Thus, the current Complaint does not contain sufficient allegations to support a claim for liability against any individual Defendant. For this reason,

---

[6] As previously noted (Count 3, *supra*), allegations that a prison officer has provoked or persuaded other inmates to cause harm to a plaintiff support an inference that the officer attempted to inflict injury on the plaintiff in violation of the Eighth Amendment. *See Merritte v. Kessel*, 561 Fed.Appx. 546, 548 (7th Cir. 2014).

[7] A Section 1983 plaintiff must make allegations that associate specific defendants with specific claims, so the defendants are put on notice of the claims brought against them and so they can properly answer the complaint. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003).

**Count 17** fails to state a claim upon which relief may be granted, and it shall be dismissed without prejudice.

<h2 align="center">Count 18</h2>

Plaintiff contends that when he was released from segregation, Mueller kept Plaintiff in a receiving cell for more than 30 days and "allowed" Plaintiff to have multiple new cellmates. Plaintiff contends this resulted in new cellmates sexually assaulting him and stealing his personal property. Plaintiff claims Mueller knew this would "break" Plaintiff.

The above allegations fall short of stating a viable claim. It is possible that Plaintiff is attempting to assert a separate retaliation claim as to Mueller for Mueller's conduct after Plaintiff was released from segregation. However, the Complaint does not indicate that the conduct had a retaliatory motive or connect it with any protected activity. It is also possible that Plaintiff is attempting to assert a separate failure to protect claim. However, the Complaint does not suggest that Plaintiff alerted Mueller to a specific threat to his safety that Mueller then disregarded. Finally, the fact that Mueller kept Plaintiff in a receiving cell for more than 30 days – standing alone – states no claim. Ultimately, without additional information, these allegations state no claim. Accordingly, Count 18 shall be dismissed without prejudice for failure to state a claim upon which relief can be granted.

## Dismissal of Certain Defendants

### *Krebs, Phillips, Schwarts, and Mocaby*

The only claims directed against Defendants Krebs, Phillips, Schwarts, and Mocaby have been dismissed without prejudice. Accordingly, these individuals shall be dismissed without prejudice and the Clerk of the Court shall be directed to terminate them as parties in CM/ECF.

### *Macon, Santos, Wilkenson, Loera, and Stolworthy*

The Court did not identify any claims directed against Defendants Macon, Santos, Wilkenson, Loera, or Stolworthy. Accordingly, these individuals shall be dismissed without prejudice and the Clerk of the Court shall be directed to terminate them as parties in CM/ECF.

### *John Doe # 1, PREA Director, and IDOC's Mental Health Director*

At the close of the Complaint (Doc. p. 19), Plaintiff attempts to connect Defendants John Doe # 1 (psychiatrist), the director of PREA, and the director of IDOC's mental health department to one or more claims by alleging that he communicated with these individuals about abuses he was experiencing at Centralia.[8]

"[I]naction following receipt of a complaint about someone else's conduct is not a source of liability." *Estate of Miller by Chassie v. Marberry*, 847 F.3d 425,

---

[8] Plaintiff also suggests that the director of PREA and IDOC's mental health director are subject to liability because of their role as supervisory officials. But, "under § 1983 , a plaintiff may not rely on the doctrine of respondeat superior to hold supervisory officials liable for the misconduct of their subordinates." *Doyle v. Camelot Care Ctrs.*, 305 F.3d 603, 614 (7th Cir. 2002) (citation omitted).

428-29 (7th Cir. 2017) (*See also Aguilar v. Gaston-Camara*, 2017 WL 2784561, *4 (7th Cir. 2017) (citing *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (the Seventh Circuit has "rejected the notion that 'everyone who knows about a prisoner's problems' will incur § 1983 liability."). Nonetheless, under certain circumstances, a prison official's knowledge of an underlying constitutional violation can trigger a duty on the part of that official to exercise his or her authority to investigate and, if needed, "rectify the offending condition." *Perez v. Fenoglio*, 792 F.3d 768, 781-82 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996).

Because these individuals were not direct participants in the alleged constitutional violations, their liability would be based solely upon their knowledge of the alleged constitutional violations and failure to act to remedy those violations – *i.e.* the standard discussed in *Perez*. Under this standard, Plaintiff has not provided sufficient information to implicate John Doe # 1, the director of PREA, or the director of IDOC's mental health department. Plaintiff contends he relayed information to these individuals regarding the alleged constitutional violations, but his allegations do not sufficiently identify which violations he complained about.[9] Thus, the offending conditions or condition

---

[9] Plaintiff alleges that he wrote "many letters" to the director of PREA but received no response. Plaintiff does not specify which of his many alleged violations were discussed in those letters. Plaintiff alleges that he sent many letters to IDOC's director of mental health regarding Defendant Aaron's "wrongs." This is insufficient, Plaintiff has directed numerous claims against Aaron. The fact that Plaintiff complained about Aaron's "wrongs" does not provide sufficient information suggesting liability as to IDOC's director of mental health or associating this individual with any particular claim involving Aaron. Finally, Plaintiff claims he told John Doe # 1 about "all the sexual abuse, harassment, the filing of false disciplinary reports and the illegal placement in

these individuals failed to address are debatable. Without more, Plaintiff has failed to state a claim as to these individuals. Accordingly, John Doe # 1, the director of PREA, and the director of IDOC's mental health department shall be dismissed without prejudice for failure to state a claim.

*Wexford*

In the Seventh Circuit, a private corporation, like Wexford, will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in the injury at issue. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015). "Respondeat superior liability does not apply to private corporations under § 1983." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Here, the allegations directed against Wexford amount to a claim for *respondeat superior* liability.[10] Accordingly, Wexford shall be dismissed without prejudice for failure to state a claim.

## Identification of Unknown Defendants

Plaintiff will be allowed to proceed against two of the unknown defendants, who are identified in the Complaint as (1) John Doe # 2 (Centralia's cell placement officer) and John Doe # 3 (all officers in East 4 House on August 7, 2015 working the 7:00 am to 3:00 pm shift and the 3:00 pm to 11:00 pm shift). These individuals must be identified with particularity before service of the Complaint can be made on them. Also, where a prisoner's complaint states

H.C.U. segregation." These allegations are closer to hitting the mark, but are still insufficient and do not clearly connect a specific claim with John Doe # 1.
[10] Plaintiff alleges Wexford is subject to liability, presumably for the mental healthcare Plaintiff received, because it is the healthcare provider at Centralia. (Doc. 1, p. 19).

specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

For that reason, Plaintiff shall be allowed to proceed against Centralia's current warden (who is already an individual capacity defendant in the instant case), in his official capacity, for the purpose of responding to discovery (informal or formal) aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Pending Motions

Plaintiff's Motion for Leave to Proceed *In Forma Pauperis* (Doc. 2) has been granted. (Doc. 7). Accordingly, Plaintiff's Motion for Service of Process at Government Expense (Doc. 3) shall be denied as unnecessary.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to a United States Magistrate Judge for disposition.

## Disposition

The Clerk of the Court is **DIRECTED** to rename **UNKNOWN PARTY # 1** and **UNKNOWN PARTY # 2** as follows: (1) **JOHN DOE # 1** (Psychiatrist); **JOHN**

**DOE # 2** (Centralia's cell placement officer); and **JOHN DOE # 3** (all officers in East 4 House on August 7, 2015 working the 7:00 am to 3:00 pm shift and the 3:00 pm to 11:00 pm shift).

**IT IS HEREBY ORDERED** that **MACON, SANTOS, WILKENSON, LOERA, STOLWORTHY, KREBS, PHILLIPS, SCHWARTS, MOCABY, JOHN DOE # 1, PREA DIRECTOR, IDOC'S MENTAL HEALTH DIRECTOR,** and **WEXFORD** are **DISMISSED** from this action without prejudice for failure to state a claim upon which relief can be granted. The Court **DIRECTS** the Clerk of the Court to terminate these individuals as parties in CM/ECF.

**IT HEREBY ORDERED** that **COUNT 1** shall receive further review as to **QUARRIE, DELGADO, JOHNSON, ROBINSON, AARON,** and **TOENNIES.**

**IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review as to **QUARRIE, DELGADO, JOHNSON, ROBINSON, AARON,** and **TOENNIES.**

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review as to **CONRAD** and **BAILEY**. **COUNT 3** shall be dismissed without prejudice as to **MACOBY, PHILLIPS, SCHWARTZ, QUARRIE, JOHNSON,** and **DELGADO.**

**IT IS FURTHER ORDERED** that **COUNT 4** shall receive further review as to **CONRAD, BAILEY, KAULING, JOHN DOE # 3, DELGADO, QUARRIE, BURTON, ROBINSON, CAMPBELL,** and **AARON.**

**IT IS FURTHER ORDERED** that **COUNT 5** is **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that **COUNT 6** shall receive further review as to **BAILEY, CONRAD,** and **FOREMAN**.

**IT IS FURTHER ORDERED** that **COUNT 7** shall receive further review as to **BAILEY, CONRAD,** and **FOREMAN**.

**IT IS FURTHER ORDERED** that **COUNT 8** shall receive further review as to **SANTAS** and **KEEB.**

**IT IS FURTHER ORDERED** that **COUNT 9** shall receive further review as to **BAILEY, CONRAD,** and **JOHN DOE # 2.**

**IT IS FURTHER ORDERED** that **COUNT 10** shall receive further review as to **AARON, DOSE, DELGADO, QUARRIE, ROBINSON, BURTON, KAULING,** and **MUELLER.**

**IT IS FURTHER ORDERED** that **COUNT 11** shall receive further review as to **DELGADO, QUARRIE, ROBINSON,** and **MUELLER**. **COUNT 11** shall be dismissed without prejudice as to **JOHNSON** and **BURTON** for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 12** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNTS 13** and **14** which are directed at an unidentified officer who is not a party to this action, are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 15** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 16** shall receive further review as to **GOODEN**.

**IT IS FURTHER ORDERED** that **COUNT 17** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that **COUNT 18** is **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted.

**IT IS FURTHER ORDERED** that as to **COUNTS 1-4, 6-11,** and **16** the Clerk of the Court shall prepare for Defendants **GOODEN, JOHN DOE # 2, JOHN DOE # 3, CONRAD, BAILEY, QUARRIE, DELGADO, JOHNSON, DOSE, FOREMAN, KAULING, CAMPBELL, BURTON, AARON, ROBINSON, TOENNIES,** and **MUELLER:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).

The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known

address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Other than notice to be sent to **MUELLER,** as ordered above, service shall not be made on the Unknown Defendants (John Doe # 2 and John Doe # 3) until such time as Plaintiff has identified them by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate** for further pre-trial proceedings, including Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to a **United States Magistrate** for disposition pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral*.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.09.18
07:58:06 -05'00'

**United States District Judge**